Mr. Justice CLIFFORD
delivered the opinion of the court.
Assignees of the charter-party and of the bill of lading libelled the ship Bird of Paradise, her tackle, apparel, and furniture in a cause of contract, civil and maritime.
Breach of contract alleged in the libel is the refusal of the master of the ship to deliver the cargo as stipulated in the. *553 charter-party and bill of-lading. Voyage was from Liverpool to San Francisco, and the cargo consisted of nine hundred and fifty-two tons of coal. Terms of the charter-party, material to the inquiry are, that the freight shall “be paid in Liverpool on unloading and right delivery of the cargo,” at the rate therein prescribed, and in full of all other specified charges. “ Such freight is to be paid, say one-fourth in cash, and one-fourth by charterer’s acceptance at six' months from the final sailing'of the vessel, ■ . . and the remainder by like bill at three months from date of delivery, at charterer’s office in Liverpool, of the certificate of the right1 delivery of the cargo agreeably to bill of lading, or in cash under discount at five per cent, per annum, at freighter’s option.” Other material clauses are, that the “ vessel shall ” be addressed to the freighter’s agent abroad, that five hundred pounds sterling shall “ be advanced in cash at port of discharge on account of the freight,” and that “the ship and her freight are bound to this venture,” but it does not contain the usual clause that the cargo is bound to the ship. Bill of lading is in the usual form and, contains the clause, “ they paying freight for the goods at the rate as per charter-party.” Sum advanced for first instalment of freight was subject to three months’ interest, at five per cent, per annum, and cost of insurance. Charter-party .was signed by the claimants, and the bill of lading was signed by the master. Ship was loaded by the charterer, and it is proved she arrived in safety at the port of destination with the cargo on board. Consignees demanded the goods, but the master refused to deliver the same unless the freight was paid contemporaneously with the delivery, placing the refusal upon the ground that the ship had a lien upon the cargo for the; unpaid balance of the freight, but the libellants claimed that they were entitled to the delivery of the cargo without paying any freight except in the manner provided in the charter-party.
1. Proofs showed that the ship sailed on the sixteenth day of April, 1863, and that she arrived at the port of destination on the twenty-sixth day of December in the same year. *554 Cash instalment of freight was paid as stipulated in the charter-party. Acceptance of the charterer given for the second instalment, payable in six months from date, was delivered to the claimants on the day the ship sailed from the port of departure. Before she arrived at the port of destination, the charterer failed in business, and became and is insolvent and bankrupt.
Payment of the acceptance was never made, and the proofs show that it is still held and owned by the claimants. Whole freight remains unpaid except the cash instalment paid before the ship sailed, and the five hundred pounds stipulated to be advauced in cash- at the port of discharge. Amount due and unpaid is seven thousand and fifty dollars in gold, deducting the sum advanced at the port of discharge and including the residue of the last instalment and the unpaid and protested acceptance. Pending the suit, the cargo was delivered to the consignees under a stipulation that it should be returned to the master in case the claim of lien for freight should be sustained. Decree of the District Court was that the claim was unfounded; that the ship had no lien for freight on the cargo, and that the stipulation for the return of the cargo should be given- up to be cancelled. Circuit Court affirmed the decree, and the claimants appealed to this court.
2. Equities of the case in view of the whole record are strongly with the ship-owner, hut the questions presented for decision are questions of law and must depend upon the construction of the contract as expressed iu the charter-party. Deference need not be made to the bill of lading, as it is in the usual form, and refera to the charter-party as the controlling evidence of the contract in respect to the matter involved in this controversy. Ship-owners, unquestionably, as a general rule, have a lien upon the cargo for the freight-, aud consequently may retain the goods after the arrival of the ship at the port of destination until the pay-. ment is made, unless there is some stipulation in the charter-party or bill of lading inconsistent with such right of retention, and which displaces the lien.
*555 3. Such a lien is regarded in the jurisprudence' of the United States as a maritime, lien, because it arises from the usages of commerce, independently of the agreement of the parties, and not from any statutory regulations. Legal effect of such a lien is, that the ship-owner, as carrier by. water, may retain the goods until the freight is paid, or he may enforce the same by a proceeding in rem in tho District Court. Biit it is not the same as the privileged claim of the civil law, nor is it an hypothecation of the cargo which will remain a charge upon the goods after the ship-owner has pai'ted unconditionally with the possession. Although the lien is maritime -and cognizable in the admiralty, yet it stauds upon the same gfound ivith the lien of the carrier on land, and arises from the right of the ship-owner to retain the possession of the goods until the freight is paid, and is lost by an unconditional delivery to the consignee.*
Parties, however, may frame their .contract of affreightment as they please, and of course may employ words to affirm the existence of the maritime lien, or to extend or modify it, or they may so frame their contract as to exclude it altogether. They may agree that the goods, when the ship arrives at the port of destination, shall be deposited in .the warehouse of tho consignee or owner, and that the transfer and deposit shall not be regarded as the waiver of the lien; and where they so agree, tho settled rule iu this court is, that the law will uphold the agreement and support the lien.†
4. Presumption is in favor of the .lien as already explained, but it may be modified, or it may be excluded or displaced by direct words, or by the insertion of some stipulation wholly incompatible or irreconcilable with the existence of such á right. Contracts o'f affreightment, like othér commercial contracts, where the language employed is ambiguous or of doubtful meaning, are subjecPto judicial construction, and it often happens that the terms of the instrument *556 in respect to the payment of freight and the delivery of the cargo are so inaptly chosen that it gives rise to very close and embarrassing questions. Where the stipulation is, that the goods are to be delivered at the port of discharge before the freight is paid, without any condition or qualification, it 6eems to be agreed that the lien of the ship-owner for the payment of the freight is waived and lost, as the right of lien is inseparably associated with the possession of the goods. Unless the stipulation is, that'the delivery shall precede the. payment of the freight, and the language employed 'as applied to the subject-matter and the surrounding circumstan es is such as clearly to show that the change of possession is to be absolute and unconditional, the lien is not displaced, as the presumption of law is the other way, which is never to be regarded as controlled, except in cases where the language employed in the instrument satisfactorily indicates that such is the intention of the parties.
5. Such precedent delivery, if absolute and unconditional, displaces the lien for freight, because it is repugnant to it and incompatible with it; but where the payment or security of payment is to be concurrent or simultaneous with the delivery of the cargo the lien exists in full force, and the ship-, owner cannot be required to make the delivery until the payment of freight, or security, as the case may be, is tendered. Judge Story says the lien exists if it appears that the payment is do be made before or at the delivery of the cargo, or even if it does no¿ appear that the delivery is to precede such payment. — (The Volunteer, 1 Sumner C. C. 571.) Accordingly, he held in that case, that the stipulation that the freight should be paid within ten days after the vessel returned to the port of departure, did not displace the lien on the return cai'go, as the unlivery of the cargo might be .rightfully postponed beyond the ten days after the return of the ship, when, by the terms of the charter-party, the freight would become clüe. Same defence, that is, the waiver or displacement of the lien by a clause in the Charter-party giving credit for the payment of the freight, was set up in a subsequent casé before the same court, in which the terms of the *557 clause relied on afforded more color to the views of the respondent.*
Terms of the stipulation in that ease were, that the freight should be paid “ in five days after the vessel’s return to, and discharge in, the return port of the voyage.” Argument of the respondent was, that the word discharge, as used in the clause, meant not merely the unloading of the brig, but the delivery of the cargo to the charterer or owner of the goods. Aided, however, by the terms of the bill of lading, which referred to the charter-party, the court came to the opposite conclusion, and held that the word discharge, as there used, meant merely the unlading of the cargo from the ship, without any reference to a delivery to tire owner or consignee. Exactly the same rule was adopted and applied by this court in the construction of a similar clause of a charter-party in a ease heard and decided at the last term.
Part of the charter-money, in that case, was agreed to be paid, aud was paid, before the ship sailed, or during the voyage, and the stipulation was, that the balance should be paid, “ one-half in five and one-half in ten days after the discharge of the homeward cargo,” and the decision was, that the stipulation, construed in the light of another clause in the same instrument, which provided in effect that the ship .should be bound to the merchandise and the merchandise to the ship, was not'inconsistent with the right of the owner to retain the cargo for the preservation of the lien, as the clause was intended for the benefit of the charterer, giving him time to examine the goods and ascertain their condition, and to decide whether he would or would not take them and pay the freight. But the court remarked that the credit might be for so. great a period as to justify the inference that the shipowner intended to waive his right of lien; and it was decided, in an earlier case, that the lien may be waived without express words to that effect, if the charter-party contains stipulations inconsistent with the exercise of such a right, or *558 where it clearly appears that the ship-owner meant to trust to the personal responsibility of the charterer.*
6. Repeated decisions of the courts in Westminster Hall have adopted the same general rule, and in some decisions of very recent date the same principles have been applied in cases entirely analogous to the one now before the court. Settled doctrine of those courts is, that the law merchant gives to the ship a lien for the freight, or rather the right oí the ship-owner to retain the goods until the freight is paid.† They hold it to” be a common law right, not cognizable'in the admiralty; but .they admit that special clauses .in the charter-party, or bill of lading, inconsistent with it, operates as a waiver, and may destroy the right.‡
Unless, however, the special agreement is absolutely inconsistent with the retention of the goods, the waiver or displacement is not shown, and the right remains.§
Recent decisions in that country put the principal question under consideration in a clear light, and leave no doubt, if the case were pending there, how it would be solved. Take, for example, the ease of Alsager v. Dock Co.,ǁ which was decided in the Court of Exchequer. Charter-party in that case contained two clauses 'material to be noticed. First clause was, that the vessel might discharge in any dock the shipper might appoint, “ on being paid freight” at the prescribed rate per ton. Second clause was, that the freight should be paid “on unloading and right delivery of the caigo, two months after the vessel’s inward report at the customhouse.” Conclusion of the court was, that the two clauses of the charter-party must be construed together; but they *559 held that the freight was not payable until two mouths after the inward report, and that the ship-owner had not any lien on the cargo for the freight, because the delivery of the goods was required to precede the payment of the charter-money.
Terms of the charter-party in the case of Foster v. Colby,* were substantially the same, so far as respects the principal question in this case. Freight was payable in that charter-party in three instalments, but the terms of the first two payments are unimportant. Material clause reads as follows, to wút: “The remainder in cash, two months from the vessel’s report inwards, and after right delivery of the cargo, or under discount at five per cent, per annum, at freighter’s option.” Held, that the charter-party did not create any lien in respect of that part of the freight which was payable two months after the vessel’s inward report, although the charter-party contained the stipulation that the owners of the ship .should “have ail absolute lien on the cargo for all freight, dead freight, and demurrage.” Latter clause w7as intended, as the court held, not to enlarge the right of lien for freight, as generally understood, but to include dead freight and demurrage within the operation of the general provision.
7. "Words of the charter-party in this case are that the third instalment shall be paid by “bill, at three months from date of delivery at charterer’s office, in Liverpool, of the certificate of the right delivery of the cargo, agreeably to the bills of lading.” Giving the usual meaning to language, it is plain that the intent of the parties was that the delivery of the goods should precede the payment of the freight, and it is equally clear that the delivery was to be without qualification and unconditional. Certificate of right delivery of the cargo could not be obtained until the vessel was discharged, and the cargo delivered, and, if forwarded by the next steamer, a month would elapse before it could be delivered at charterer’s office in Liverpool, which would *560 extend the credit to four months from the delivery of the cargo.
8. Appellants contend that, inasmuch as the charterer failed in business and became a bankrupt before the vessel arrived at the port of discharge, the case is taken out. of the operation of those rules of law, even in respect to the last instalment. Basis of this argument is a supposed analogy between the ship-owner as against the shipper, and. the vendor of merchandise as against the vendee, as exemplified in the law of stoppage in transita, but it is not perceived that any such relation exists between .the ship-owner and the charterer,, or that there is any foundation whatever for the argument. Intention of the parties in the contract of affreightment, as in other commercial contracts, must be ascertained from the language employed, the subject-matter, and the surrounding circumstances, and it is clear that the question of construction cannot be affected in the smallest degree by the subsequent solvency or insolvency of one of the contracting parties. Credit was given in this case to the charterer for the payment of the last instalment of the freight of four months from the time when the goods were required by the terms of the instrument to be delivered to the consignee at the port of discharge, and it is too plain for argument that the subsequent insolvency of the charterer can neither erase that clause from the charter-party or shorten the term of the credit.*
Insolvency of shipper occurring while the goods are in transit, or before they are delivered, will not absolve the carrier from his agreement as made, nor authorize him to retain the goods until the freight is paid, unless the lien exists independently of that occurrence. †
9. Claim of the appellants, also,.is that the ship in this case had a lien for the second instalment of the freight, secured by the charterer’s acceptance-, made payable, in six *561 months from date, and delivered to the ship-owner on the day the ship sailed. Acceptance became due, and the charterer also became a bankrupt before the vessel arrived at the port of discharge, and it is admitted that the acceptance is still held and owned by the ship-owner.
Established rule in this court is, that a bill of exchange or promissory note given for a precedent debt does not extinguish the debt or operate as payment of the same, unless such was the express agreement of the parties. Agreement of the parties filed in the case and made a part of the record, shows that the acceptance 'was presented to the bankrupt court, and that it has never been paid, and it is not pretended that it is of any value. Valueless as the acceptance is, the objection if made, that it had never been tendered to be cancelled, would be a mere technicality, but no such objection is made, and as- the parties agree that it has never ■been negotiated it must be understood that any such objection is waived. Payment of that instalment of the freight therefore is not proved, and there is no evidence in the record tending to show that the lien for that instalment of the freight was ever waived. Ship-owner under the circumstances has a right to stand upon the original contract and to seek his remedy to that extent of his claim in the form to which it originally belonged as fully as if the acceptance had never been given.*
Entire freight under this- chartér-party, except the small advance stipulated to be made at the port of ■ discharge, was to be paid in the port of shipment. Port of shipment was also the port wife re the ship lay when the contract was made, and the terms of the contract afford the most plenary evidence that the parties regarded the charter-money stipulated to be paid at that port as freight in the usual and proper sense in which that word is understood in the maritime law.†
10. Suppose,'however, a different rule could be applied to *562 the sura actually paid or advanced before the vessel sailed. Still that concession, if made, Avould'not affect the question as to the second instalment'in this case, because that instalment aves not advanced in money, and has never been paid. Separated from the acceptance, Avhich, under the decisions of this court, was not payment, it presents the ordinary case of a promise to pay freight and a'failure to fulfil the contract, and in this point of view the case is clearly distinguishable from the decision in which it is held that sums stipulated in charter-parties to be paid in advance' and not dependent on the carrier’s contract do not have the incidents of freight, and are not protected by the lien of the ship-owqer, unless by usage or special contract.*
11. Foundation of those decisions is, that money advanced as freight cannot be recovered-back, not even in'case the ship is lost on the voyage, and the freight is never earned; because, as it is said, payment determines the lien, and anything accepted as an advance, such as a bill of exchange, is the same thing, unless there is an express agreement to the contrary. Undoubtedly an actual payment determines the lieu to that extent, but it is not cdrrect to say that a bill of exchange Las the same effect, unless it be so agreed between the parties; and the settled doctrine in this country is, that freight paid in adA7ance is not earned unless the voyage is performed, and that the shipper may recover it back, if for any fault not imputable to Mm the contract is not fulfilled.†
12. Absence of the clause that the merchandise is bound to the ship cannot affect the question, as that is the presumption of the law-merchant, from the. relation between the ship and the cargo, independently of any express stipulation, unless the presumption to that effect is negatiyed by the language of the contract.‡ Whenever the owners of the *563 fillip constitute one party, and the owners of the cargo the other, the law of freight applies, and the fundamental rule, says Mr. Parsons, is that the rights of the respective parties are reciprocal, and that each has a lien against the other to enforce those rights, and the better opinion is, that the lien for freight commences as soon as the goods are delivered into the control of the master, or certainly as soon as they are put on board.*
Usually the charter-party contains a clause binding the ship to' the merchandise and the merchandise to the ship, but the law-merphant, as already explained, imposes that mutual obligation even if it be omitted.†
Decree of the Circuit Court must be reversed with costs, and the cause remanded for further proceedings in conformity to this opinion. Libellants, upon the payment of the amount of the protested acceptance and interest and costs of suit, will be entitled to a decree that the stipulation given for the return of the goods shall be given up to be cancelled. Otherwise the libel must be dismissed.
Decree reversed with costs.

 1 Black, 113.

 Mordecai v. Lindsay (The Eddy,—Rep.), supra, p. 481.

 Certain Logs of Mahogany, 2 Sumner, 600.

 The Kimball, 3 Wallace, 42; Raymond v. Tyson, 17 Howard, 59.

 Philips v. Rodie, 15 East, 554.

 Lucas v. Nockells, 4 Bingham, 731; Chase v. Westmore, 6 Maule & Selwyn, 180; Tate v. Meek, 8 Taunton, 280; Horncastle v. Farran, 3 Barnewall & Alderson, 497; Small v. Moaltes, 9 Bingham, 588.

 Crawshay v. Homfray, 4 Barnewall & Alderson, 50; Pinney v. Wells, 10 Connecticut, 104; Howard v. Macondray, 7 Gray, 516; Wilson v. Kymer, 1 Maule & Selwyn, 157; Neish v. Graham, 8 Ellis & Blackburne, 510; Campion v. Colvin, 3 Bingham, N. C. 26.

 14 Meeson & Welsby, 798.

 3 Hurlstone & Norman, 715.

 Alsager v. Dock Co., 14 Meeson & Welsby, 798; Tamvaco v. Simpson, 1 Law Rep. C. P. 371; Same case, 19 Common Bench, N. S. 478.

 Crawshay v. Homfray, 4 Barnewall & Alderson, 50; Chandler v. Belden, 18 Johnson, 157; Fieldings v. Mills, 2 Bosworth, 498.

 Steamer St. Lawrence, 1 Black, 533; The Kimball, 3 Wallace, 45; The Active, Olcott, Admr. 206; Bark Chusan; 2 Story, 457.

 Gilkison v. Middleton, 2 Common Bench, N. S. 152; Neish v. Graham 8 Ellis & Blackburne 610; Gracie v. Palmer, 8 Wheaton, 605.

 How v. Kirchner, 11 Moore’s Privy Council, 21; Kirchner v. Venus, 12 Id. 384; Maclachlan on Shipping, 383.

 The Kimball, 3 Wallace, 44; Benner v. Insurance Company, 6 Allen, 222; Chase v. Insurance Company, 9 Id. 313; Watson v. Duykinck, 3 Johnson, 335; Griggs v. Austin, 3 Pickering, 20; 3 Kent Com. (11th ed.), 304; Pitman v. Hooper, 3 Sumner, 66.

 1 Parsons’s M. L. 124, 253.

 2 Parsons on Contracts (5th ed.) 286: Abbott on Shipping, 462; Fragano v. Long, 4 Barnewall and Creswell, 219; Cooke v. Wilson, 1 Common Bench, N. S. 153; Maclachlan on Shipping, 353; Tindall v. Taylor, 4 Ellis & Blackburn, 219; Same case, 28 English Law and Equity, 210.

 Brig Casco, Davies, 184; 2 Parsons on Contracts, 303; 2 Parsons’s M. L. 561.